**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**ESSEX INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**DENNIS LUTZ, Individually and as Liquidation Agent, SAINT ELIZABETH MEDICAL CENTER, and SISTERS OF DIVINE PROVIDENCE, d/b/a SAINT ELIZABETH HEALTH SERVICES,**

**Defendants.** **No. 06-CV-0114-DRH**

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

## I. Introduction and Background

Now before the Court is Defendants' motion to dismiss Counts I through IV of the Complaint (Doc. 14). Specifically, Defendants argue that the Court should dismiss these Counts pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint fails to state a claim. Plaintiff opposes the motion (Doc. 23). Based on the following, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss.

On February 7, 2006, Essex Insurance Company ("Essex") filed a four count complaint against Dennis Lutz, Saint Elizabeth Medical Center and Sisters of Divine Providence, dba Saint Elizabeth Health Services based on diversity jurisdiction, **28 U.S.C. § 1332** (Doc. 1). Count I is a claim for breach of contract;

Count II is a claim for breach of fiduciary duty; Count III is a claim for conversion and Count IV is a claim for declaratory relief. The Complaint alleges the following.

Essex issued and Defendants agreed to pay a premium for a Locum Tenens/Physician Staffing Services Professional Liability Insurance Policy, Policy No. MM-802793 ("Policy" ) for the period of March 1, 2001 to March 1, 2002. The Policy insured certain emergency room physicians of Defendants. Defendants were parties to agreements with the doctors pursuant to which the Defendants were contractually required to provide this insurance. Defendants also agreed to pay a per claim deductible of $500,000, with an aggregate deductible of $2,500,000.00. At that time, Lutz was the agent of Defendants St. Elizabeth Medical Center and the Sisters of Divine Providence involved in negotiating and purchasing the Policy and was the Chief Financial Officer of Saint Elizabeth Medical Center.

On December 14, 2001, Granite City Hospital Company, LLC, pursuant to an Asset Purchase Agreement, purchased substantially all of Saint Elizabeth Medical Center's assets.

Effective January 4, 2002, at Defendants' request, Essex cancelled the Policy. However, on that same date, again at Defendants' request, Essex issued a Purchased Optional Extension Period ("OEP") pursuant to the contractual terms of the Policy. The OEP applies to claims made during the period January 4, 2002 to January 4, 2005, but only with respect to Malpractice or Personal injury which happened between March 1, 2001 and January 4, 2002. The OEP has the same $500,000 cost and expense deductible per claim, with an aggregate deductible of

$2,500,000.00.

On February 21, 2003, Saint Elizabeth Medical Center filed Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Southern District of Illinois, Case No. 03-30712. After this time, Lutz served as an officer and director of Saint Elizabeth Medical Center and became its Liquidation Agent. Saint Elizabeth Medical Center did not provide notice of the filing of the Chapter 11 proceedings to Essex. Saint Elizabeth Medical Center's schedules of liabilities and assets did not list Essex as a creditor.

On March 6, 2003, the Bankruptcy Court entered its Order Setting Claims Bar Date for the Filings of Proofs of Claim establishing June 26, 2003 as the deadline for all persons that assert a claim against the Debtor that arose on or prior to February 21, 2003. Neither Saint Elizabeth Medical Center nor Lutz served the Claims Bar Date Order on Essex. On July 3, 2003, the Bankruptcy Court entered its Confirmation Order approving Saint Elizabeth Medical Center's Amended Plan of Liquidation. Pursuant to the Plan, Lutz was appointed as Liquidation Agent to liquidate and distribute Saint Elizabeth Medical Center's assets. Under this Plan, Lutz was required to withhold reserves for known and/or disputed claims against Saint Elizabeth Medical Center. Neither Saint Elizabeth Medical Center nor Lutz served the Disclosure Statement, the Plan or the Confirmation Order on Essex.

On August 1, 2003 and September 25, 2003, two lawsuits were filed against certain emergency room physicians covered under the Policy. The lawsuits relate to alleged medical malpractice that occurred in 2001. On August 15, 2003,

Saint Elizabeth Medical Center and Lutz's lawyers wrote a letter to Essex tendering the defense of the emergency room physicians in one of the lawsuits. The letter did not mention that Saint Elizabeth Medical Center had filed , that it had recently obtained the Confirmation Order or that distribution of all assets was commencing. Pursuant to the Policy, Essex assumed the defense of the emergency room physicians in the lawsuit. After the defenses commenced, Essex attempted to have Saint Elizabeth Medical Center and Sisters of Divine Providence pay the $500,000 deductible. Essex's claim specialist, Tomas Rae, contacted Lutz in June of 2004. In response, Lutz left Rae a voicemail stating that he would contact the appropriate counsel to provide Essex with contact information for payments.

On July 15, 2004, an attorney for Lutz and Saint Elizabeth Medical Center called Rae and stated that there was money set aside to handle the affairs and obligations of Saint Elizabeth Medical Center. Essex sent the attorney a follow-up letter demanding payment on July 21, 2004. On November 16, 2004, Rae sent another letter to the attorney demanding payment. Defendants' attorney did not respond. Again in January 2005, Essex contacted the attorney demanding payment.

Thereafter on January 28, 2005, Saint Elizabeth Medical Center filed a Notice to Creditors Regarding Debtor's Confirmed Plan of Liquidation Dated May 16, 2003, as Amended. In the Notice, Saint Elizabeth Medical Center stated it had received $2,048,279.22 on January 4, 2005 from the escrow established pursuant to the December 12, 2001 Asset and Purchase Agreement. The Notice also stated that on January 7, 2005, $2,000,000 was transferred to the Retirement Plan for

distribution to retirees by the Retirement Plan Administrators. Again, Defendants failed to give Essex notice. Essex sent another demand letter. No response was sent.

Essex settled one of the malpractice lawsuits. Essex continues to defend the other malpractice lawsuit covered under the Policy.

## II. Motion to Dismiss

When ruling on a motion to dismiss for failure to state a claim, the district court assumes as true all facts well-pled plus the reasonable inferences therefrom and construes them in the light most favorable to the plaintiff. ***Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Wiemerslage Through Wiemerslage v. Maine Township High School Dist. 207*, 29 F.3d 1149, 1151 (7th Cir. 1994))**. The question is whether, under those assumptions, the plaintiff would have a right to legal relief. ***Id***. This standard also has been articulated:

> [U]nder "simplified notice pleading," ... the allegations of the complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

***Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1373 (7th Cir. 1984) (quoting *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957)). Accord *Fries* at 457; *Vickery v. Jones*, 100 F.3d 1334, 1341 (7th Cir. 1996).**

The Seventh Circuit has reiterated the liberal standard governing notice pleading:

> It is sufficient if the complaint adequately notifies the

> defendants of the nature of the cause of action.... As the Supreme Court has recently reminded us, the Federal Rules of Civil Procedure do not permit us to demand a greater level of specificity except in those instances in which the Rules specifically provide for more detailed elaboration. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

***Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998); *See also Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 419 (7th Cir. 1998)**. In fact, the Seventh Circuit has instructed that a plaintiff's claims *must* survive a 12(b)(6) dismissal motion if relief could be granted under *any* set of facts that could be proved consistent with the allegations. ***Hi-Lite Products Co. v. American Home Products Corp.*, 11 F.3d 1402, 1409 (7th Cir. 1993).** Motions to dismiss are intended only to test the legal sufficiency of the plaintiff's complaint, not to address the claims on their merits; summary judgment motions are the proper vehicles to consider legal arguments and evidence.

## III. Analysis

First, Defendants argue that Essex failed to state a claim for breach of contract. Specifically, Defendants argue that the Policy, on its face, established that neither Saint Elizabeth Medical Center nor Sisters of Divine Providence is liable. Defendants maintain that the Policy procured by Essex contains no obligation for either Defendants to pay the deductible described in the Policy. Defendants argue that the Policy clearly provides that the deductible is to be paid by the Name Insured under Coverage B, and Coverage B, in turn, is not applicable.

Under Illinois law, to state a cause of action for breach of contract a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of contract by defendant; and (4) a resulting injury to plaintiff. ***Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001)**.

Insurance policies must be construed as a whole, with due regard to the risk undertaken, the subject matter of the contract, and the purposes of the entired contract. ***Konami (America) Inc. v. Hartford Ins. Co. of Illinois*, 326 Ill. App. 3d 874, 879 (Ill. App. 2002)**. Illinois courts have held that clear provisions of insurance policies are to be applied as written. ***Illinois Farmers Ins. Co. v. Marchwiany*, 838 N.E.2d 172, 176 (Ill. App. 2005)**. A policy and its endorsements are to be construed together to determine the meaning and effect of the insurance contract. ***Rockford Mutual Ins. Co. v. Economy Fire & Casaulty Co.*, 576 N.E.2d 1141, 1144 (Ill. App. 1991)**. Furthermore, courts generally hold that effect should be given to all parts of the policy, including endorsements. ***Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.*, 608 N.E.2d 155, 158 (Ill. App. 1992)**. Where a conflict exists between the body of the policy and the provisions of the attached endorsement, the endorsement will control. Also, Illinois courts avoid construing contract provisions in such a manner as to render them void. ***Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 368 (Ill. 1998)**.

Essex's Complaint alleges that there was a contract between the parties; that it performed its obligations under the contract and that it is still performing its obligations under the contract; that Defendants had an obligation under the Policy to pay the deductible; that Defendants failed to pay the deductible and as a result of Defendants' failure to pay the deductible it has been harmed. The complaint also alleges that Defendants acknowledged Essex's repeated demands of payment and Defendants represented to Essex that funds had been put aside to do so. Based on these allegations, Essex's Complaint clearly states a claim of breach of contract.

As to the Policy itself, a review of the Policy indicates that it does refer several times to the obligations of the Named Insured to pay the deductible as described in the Policy. Page one of the contract specifies the Named Insured as: "EMPLOYED AND/OR CONTRACTED EMERGENCY ROOM PHYSICIANS OF SISTERS OF DIVINE PROVIDENCE DBA ST. ELIZABETH HEALTH SERVICES AND ST. ELIZABETH MEDICAL CENTER. Thereafter, each Endorsement page of the Policy states that the Named Insured is "SISTERS OF DIVINE PROVIDENCE DBA ST. ELIZABET HEALTH SERVICES AND ST. ELIZABETH MEDICAL CENTER." Nevertheless, the explanation of the Named Insured's specific obligation is somewhat more indefinite as the provision governing deductibles specifies only that it should be paid by the Named Insured under Coverage B. Coverage B of the Policy states "Not Applicable." Thus, there appears to be an ambiguity in the Policy. The Court finds this issue is best addressed in the context of a summary judgment motion. In contract cases, a motion to dismiss is not appropriate if the contract is facially

ambiguous. ***See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992)** ( **" 'If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss.' " (quoting *Quake Construction, Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill.1990)))**. At this stage in the pleadings, the Court finds that Essex's complaint states a cause of action against Defendants for breach of contract.

Defendants then argue that even if the Court finds that Essex has stated a claim for breach of contract, Essex's claim is nonetheless a pre-petition claim that was discharged by the Bankruptcy Court's Confirmation Order. Essex maintains, and Defendants do not counter, that no notice of the claims was given, Essex also argues that Defendants own arguments establish that the Bankruptcy Court's Order does not bar its claim.

Under Chapter 11, a bankruptcy court's order confirming a reorganization plan "discharges the debtor from any debt that arose before the date of such confirmation." **11 U.S.C. § 1141(d)(1)(A)**. A confirmation order, "cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy proceeding and of any claims bare dates fixed therein." ***In re Big O Movers and Storage, Inc.*, 326 B.R. 434, 435 (N.D. Ill. 2005)(citing *In re Longarder and Associates, Inc.*, 855 F.2d 455, 465 (7th Cir. 1998))**.

The Seventh Circuit has noted the difficulty in ascertaining exactly when

a claim exists for the purposes of the Bankruptcy notice requirement. ***See Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 974 F.2d 775, 781 (7th Cir. 1992)**. It also avowed that contingent claims are more likely to be recognized when dealing with "actions in contract as opposed to actions in tort." ***Id***. Moreover, the Supreme Court, while not dealing specifically with insurance policies, has held that the Bankruptcy Code contemplates all legal obligations of the debtor including any enforceable obligations whether or not contingent. ***See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)**. Based on the case law and the relationship that existed between the parties, the Court finds that notice should have been given to Essex regarding the Bankruptcy proceedings. Essex's Complaint states a cause of action for breach of contract. The Court denies Defendants' motion to dismiss on Count I of the Complaint.

Second, Defendants argue that the Complaint fails to allege a duty or a breach of fiduciary duty. Specifically, Defendants argue that at the time of the proceedings, there were no claims pending under the Policy. Thus, Defendants argue that the claims giving rise to Essex's cause of action were not known until after the Bankruptcy Court entered its Confirmation Order. Defendants also argue that Essex has failed to allege damages caused by the alleged breach.

In Illinois, a claim for fiduciary duty must allege (1) a fiduciary duty on the part of the defendant; (2) a breach of that duty; (3) injury to Plaintiff; and (4) plaintiff's injury was approximately caused by the breach. ***Estate of Lis*, 847**

**N.E.2d 879, 885 (Ill. App. 2006)**.

Here, the Complaint alleges that Essex had a contractual relationship with Saint Elizabeth Medical Center at the time of the Bankruptcy; that Lutz and Saint Elizabeth Medical Center knew that there may be liability to Essex based on the insurance contract and that they even knew the amount of the claim. The Complaint also alleges that Essex should have been included in the Bankruptcy but was not. In their brief, Defendants cite to cases that refrain from requiring the debtor to practice in extended searches for possible creditors, though, these cases are based in tort actions and had not accrued at the time bankruptcy was filed. As the parties had no legal relationship at the time of the filing, the debtor had no duty to search out these possible creditors. However, in the case at bar, the legal relationship between Essex and Defendants existed at the time the Bankruptcy Petition was filed. Even though there were no pending claims under the policy at the time the Petition was filed, it seems that the possibility of future claims was foreseeable. Based on the allegations, the Court finds that Essex has stated a cause of action for breach of fiduciary duty.

Next, Defendants argue that Essex 's conversion claim is nothing more than Saint Elizabeth Medical Center's purported obligation to pay money and it is barred by the economic loss doctrine. Under Illinois law, in order to state a claim for conversion, a plaintiff must allege (1) an unauthorized and wrongful assumption of control, dominion, or ownership of personal property; (2) a right to the property; (3) an absolute and unconditional right of immediate possession; and (4) that the

demand was made for possession. ***General Motors Corp. v. Douglass*, 565 N.E.2d 93, 96-7 (Ill. App. 1990)**. In Illinois, the economic loss doctrine prevents a plaintiff from recovering purely economic losses that result from the defeated expectations of a commercial bargain. ***Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 115 N.E.2d 246, 249 (Ill. 1986)**. However, this doctrine allows recovery in tort in the limited circumstances where the breach of duty in tort is independent of the contract between the parties. ***Congregation of the Passion v. Touche Ross & Co.*, 159 Ill.2d 137, 164 (Ill. 1994)**. For example, Illinois Courts have held that a complaint against an attorney can be brought as a contract claim or tort claim because a lawyer has a duty to a client independent of any contractual obligation. ***Id.* at 162**.

Therefore, Plaintiff must allege that Defendant owed it a duty completely independent of the one arising under the contract. Essex claims that Defendant owed it an independent duty in connection with the liquidation of Saint Elizabeth Medical Center. Though, any duty owed to Essex during the Bankruptcy proceedings arose as a direct result of the contract between Essex and Saint Elizabeth Medical Center. Thus, the Court finds that Essex failed to allege a duty independent of the contract between the parties and that the conversion claim is barred by the economic loss doctrine. Accordingly, the Court grants Defendants motion to dismiss on Count III of the Complaint.

Next, Defendants argue that the claims against Lutz fail as the

allegations do not provide a basis to hold Lutz individually liable. Under Illinois law, corporate officers generally are not liable for corporate liabilities and debts. ***People ex rel. Madigan v. Tang*, 805 N.E.2d 243, 253-54 (Ill. 2004)**. However, an officer can be held liable for corporate liabilities in tort if the officer actively participates in the tortious act. ***Id.*** Here, Plaintiff maintains that Lutz breach a fiduciary duty owed to it when Lutz made false representations that money had been set aside to pay any debt owed to Essex. The Complaint further alleges that Lutz himself actively participated in both the representations made to Essex and in the distribution of funds which Essex alleges ownership. Based on these allegations, the Court finds that Essex has stated claims against Lutz individually.

## IV. Conclusion

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss Counts I through IV of the Complaint (Doc. 14). The Court **DISMISSES with prejudice** Count III of Plaintiff's Complaint.

**IT IS SO ORDERED.**

Signed this 20th day of March, 2007.

/s/ David RHerndon
**United States District Judge**