IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ESSEX INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**DENNIS LUTZ, Individually and as Liquidation Agent, SAINT ELIZABETH MEDICAL CENTER, and SISTERS OF DIVINE PROVIDENCE, d/b/a SAINT ELIZABETH HEALTH SERVICES,**

**Defendants/Third Party Plaintiffs,**

**v.**
**JOHN RIFFLE, LAWRENCE PARRES and LEWIS, RICE & FINGERISH, L.C.,** No. 06-CV-0114-DRH

**Third-Party Defendants.**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Procedural Background

This matter comes before the Court on Defendants Lutz, Saint Elizabeth Medical Center, and Sisters of Divine Providence, d/b/a Saint Elizabeth Health Services' motion for summary judgment pursuant to Federal Rule of Procedure 56 (Doc. 69) and Third-party Defendants Lewis, Rice & Fingersh, L.C., John Riffle and Lawrence Parres' motion for summary judgment of Third Party Defendants and joinder in Defendants' motion for summary judgment (Doc. 70). Defendants argue

that the Policy issued by Essex does not require Defendants to pay the deductible, thus, all Plaintiff's claims fail. Obviously, Plaintiff opposes the motion arguing that the Policy is clear and that Defendants SEMC and SDP are the parties responsible to pay the deductible (Doc. 89). Based on record, the applicable case law and the following, the Court denies the motions.

On February 7, 2006, Essex Insurance Company ("Essex") filed a four count complaint against Dennis Lutz, Saint Elizabeth Medical Center ("SEMC") and Sisters of Divine Providence, d/b/a Saint Elizabeth Health Services ("SDP") based on diversity jurisdiction, **28 U.S.C. § 1332** (Doc. 1). Count II is a claim for breach of fiduciary duty; Count III is a claim for conversion and Count IV is a claim for declaratory relief. The Complaint contains the following allegations.

Essex issued and Defendants agreed to pay a premium for a Locum Tenens/Physician Staffing Services Professional Liability Insurance Policy, Policy No. MM-802793 ("Policy") for the period of March 1, 2001 to March 1, 2002. The Policy insured certain emergency room physicians of Defendants. Defendants were parties to agreements with the doctors pursuant to which the Defendants were contractually required to provide this insurance. Defendants also agreed to pay a per claim deductible of $500,000, with an aggregate deductible of $2,500,000.00. At that time, Lutz was the agent of Defendants SEMC and the SDP involved in negotiating and purchasing the Policy and was the Chief Financial Officer of SEMC.

On December 14, 2001, Granite City Hospital Company, LLC, pursuant to an Asset Purchase Agreement, purchased substantially all of SEMC's assets.

Effective January 4, 2002, at Defendants' request, Essex cancelled the Policy. However, on that same date, again at Defendants' request, Essex issued a Purchased Optional Extension Period pursuant to the contractual terms of the Policy. The OEP applies to claims made during the period January 4, 2002 to January 4, 2005, but only with respect to Malpractice or Personal injury which happened between March 1, 2001 and January 4, 2002. The OEP has the same $500,000 cost and expense deductible per claim, with an aggregate deductible of $2,500,000.00.

On February 21, 2003, SEMC filed Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Southern District of Illinois, Case No. 03-30712. After this time, Lutz served as an officer and director of SEMC and became its Liquidation Agent. SEMC did not provide notice of the filing of the Chapter 11 proceedings to Essex. SEMC's schedules of liabilities and assets did not list Essex as a creditor.

On March 6, 2003, the Bankruptcy Court entered its Order Setting Claims Bar Date for the Filings of Proofs of Claim establishing June 26, 2003 as the deadline for all persons that assert a claim against the Debtor that arose on or prior to February 21, 2003. Neither SEMC nor Lutz served the Claims Bar Date Order on Essex. On July 3, 2003, the Bankruptcy Court entered its Confirmation Order approving SEMCs Amended Plan of Liquidation. Pursuant to the Plan, Lutz was appointed as Liquidation Agent to liquidate and distribute SEMC's assets. Under this Plan, Lutz was required to withhold reserves for known and/or disputed claims

against SEMC.  Neither SEMC nor Lutz served the Disclosure Statement, the Plan or the Confirmation Order on Essex.

On August 1, 2003 and September 25, 2003, two lawsuits were filed against certain emergency room physicians covered under the Policy.  The lawsuits relate to alleged medical malpractice that occurred in 2001.  On August 15, 2003, SEMC and Lutz's lawyers wrote a letter to Essex tendering the defense of the emergency room physicians in one of the lawsuits.  The letter did not mention that SEMC had filed bankruptcy, that it had recently obtained the Confirmation Order or that distribution of all assets was commencing.  Pursuant to the Policy, Essex assumed the defense of the emergency room physicians in the lawsuit.  After the defenses commenced, Essex attempted to have SEMC and SDP pay the $500,000 deductible.  Essex's claim specialist, Tomas Rae, contacted Lutz in June of 2004.  In response, Lutz left Rae a voicemail stating that he would contact the appropriate counsel to provide Essex with contact information for payments.

On July 15, 2004, an attorney for Lutz and SEMC called Rae and stated that there was money set aside to handle the affairs and obligations of SEMC.  Essex sent the attorney a follow-up letter demanding payment on July 21, 2004.  On November 16, 2004, Rae sent another letter to the attorney demanding payment.  Defendants' attorney did not respond.  Again in January 2005, Essex contacted the attorney demanding payment.

Thereafter on January 28, 2005, SEMC filed a Notice to Creditors Regarding Debtor's Confirmed Plan of Liquidation Dated May 16, 2003, as Amended.

In the Notice, Saint Elizabeth Medical Center stated it had received $2,048,279.22 on January 4, 2005 from the escrow established pursuant to the December 12, 2001 Asset and Purchase Agreement. The Notice also stated that on January 7, 2005, $2,000,000 was transferred to the Retirement Plan for distribution to retirees by the Retirement Plan Administrators. Again, Defendants failed to give Essex notice. Essex sent another demand letter. No response was sent.

Essex settled one of the malpractice lawsuits. Essex continues to defend the other malpractice lawsuit covered under the Policy.

On March 20, 2007, the Court granted in part and denied Defendants' motion to dismiss (Doc. 35). In that Order, the Court dismissed with prejudice Count III of Plaintiff's complaint. Thereafter on November 1, 2007, SEMC, SDP and Lutz filed a third party complaint against John J. Riffle, Lawrence Parres and Lewis, Rice & Fingersh, L.C. for contribution and indemnity alleging that their malpractice is the proximate cause of any liability defendants may have to Essex (Doc. 57).

Now before the Court are the two motions for summary judgment (Docs. 69 & 70). Both motions are ripe for ruling. The Court now turns to address the merits of the motions.

## II. Facts

SEMC procured and paid the premium for a Locum Tenens/Physician Staffing Services Professional Liability Insurance Policy, Policy No. MM-802793. The Policy insured medical malpractice claims against emergency room physicians at St. Elizabeth's Hospital in Granite City, Illinois occurring and reported between March

1, 2001 and March 1, 2002. On January 4, 2002, Essex issued a Purchased Optional Extension Period extending the reporting period to January 4, 2005 for medical malpractice claims against emergency room physicians at St. Elizabeth's Hospital occurring March 1, 2001 and March 1, 2002. The Purchased Option Extension Period included the same language regarding the payment of the deductible.

Page 1 of the Declarations of the Policy provides in part:

1. **NAMED INSURED:**
    (a) Coverage A: Individual Liability Coverage: EMPLOYED AND/OR CONTRACTED PHYSICIANS OF DIVINE PROVIDENCE DBA ST. ELIZABETH HEALTH SERVICES AND ST. ELIZABETH MEDICAL CENTER
    (b) Coverage B: Association, Corporation or Partnership Liability Coverage: Not Applicable
3. **PROFESSIONAL SPECIALITY OF THE INSURED**: Emergency Medicine
4. **POLICY PERIOD**: From March 1, 2001 to March 1, 2002
    12:01 A.M. Standard Time at address of Insured stated above.

\*\*\*

6. **COVERAGE AND LIMITS OF LIABILITY:**
    Coverage A: (a) Each Claim Including Claim Expenses
        Each Insured: $1,000,000
    (b) Aggregate For All Claims and Claim Expenses,
        Each Insured: $3,000,000
    Coverage B: (c) Each Claim Including Claim Expenses,
        Each Insured: Not Applicable
    (d) Aggregate For All Claims and Claim Expenses,
        Each Insured: Not Applicable
    COVERAGE A, COVERAGE B AND BOTH COMBINED:
    (e) Single Per Patient Claim Including Claim
        Expenses, All Insureds: $1,000,000
    POLICY LIMIT: Subject to Coverage A and Coverage B above, the Total Aggregate Limit of Liability for the Policy Period, including the Optional Extension Period, for All Claims, All Claim Expenses, All Insureds: $6,000,000

7. **DEDUCTIBLE**: As Per Endorsement No. 1

Endorsement 1 of the Policy states at the top of the page that the Named Insured is "SISTERS OF DIVINE PROVIDENCE DBA ST. ELIZABETH HEALTH SERVICES AND ST. ELIZABETH MEDICAL CENTER."

Further, the Policy on page 1 defines "THE INSURED" as:

The unqualified word "Insured" whenever used in this policy means:
    (a)    under Coverage A: Individual Professional Liability, each individual described as an Insured in Item 1.(a) of the Declarations;
    (b)    under Coverage B: Association, Corporation, or Partnership Liability, the association, corporation or partnership described in Item 1.(b) of the Declarations and any member, stockholder, and/or partner, executive officer, and/or medical director thereof with respect to actions or omissions of others, provided that no member, stockholder or partner executive officer, and/or medical director shall be an Insured under this paragraph (b) with respect to liability for his personal acts of a professional nature, hereinafter referred to as the Named Insured;
    (c)    all former independent contracted physicians for any claim made during this policy period, including any applicable Optional Extension Period, PROVIDED ALWAYS THAT:
        (1)    coverage for any such claim would have been afforded under this policy had such claim been presented while such independent contracted physician was an Insured under this policy, and
        (2)    there is no other valid insurance available to said independent contracted physician for any such claim.
    (d)    the heirs, executors, administrators, assigns and legal representatives of each Insured above in the event of his death, incapacity or bankruptcy.

Also, the Policy on page 7 provides:

2. **DEDUCTIBLE**: The deductible applicable under this policy shall be set forth as indicated in Item 7. of the Declarations.
    The deductible amount stated in Item 7. of the Declarations shall be paid by the Named Insured under Coverage B and shall be applicable to each claim and to each notice given to the Company pursuant to THE COVERAGE 3. Discovery Clause, and shall include damages and claim expenses, whether or not payment for damages is made.

> Such amounts shall, upon written demand by the Company, be paid by the Named Insured under Coverage B within ten (10) days. The total payments requested from the Named Insured under Coverage B in respect of each claim shall not exceed the deductible amount stated in Item 7. of the Declarations.
> The determinations of the Company as to the reasonableness of each claim expenses shall be conclusive on the Insured.

In 2003, SEMC filed for bankruptcy and liquidated all assets pursuant to a Plan of Liquidation that was confirmed by the Bankruptcy Court in July 2003. After SEMC's discharge from bankruptcy, two of the insured emergency room physicians were sued for malpractice. Pursuant to the Policy, Essex secured counsel to defend those claims. One claim settled for $500,000 and the other one remains pending and Essex has incurred defense costs related thereto.

### III. **Summary Judgment**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. Proc. 56(c)**. A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. ***Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994)**. The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact

for trial. **Fed. R. Civ. Proc. 56(e);** *Celotex Corp. v. Catrett,* **477 U.S. 317, 325 (1986)**. In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986)**.

## IV. <u>Analysis</u>

Under Illinois law, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum and Forster Managers Corp. v. Resolution Trust Corp.,* **620 N.E.2d 1073, 1077 (Ill.1993);** *BASF AG v. Great American Assurance Co.,* **522 F.3d 813 (7th Cir. 2008); see** *also Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.,* **139 F.3d 561, 565 (7th Cir. 1998)(stating that "Illinois law ... treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily"** ). When analyzing an insurance policy, a court must look to the intentions of the parties and consider the policy as a whole, "taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Id.* **at 1077-78**. Illinois courts have held that clear provisions of insurance policies are to be applied as written. *Illinois Farmers Ins. Co. v. Marchwiany*, **838 N.E.2d 172, 176 (Ill. App. 2005)**. A policy and its

endorsements are to be construed together to determine the meaning and effect of the insurance contract. **Rockford Mutual Ins. Co. v. Economy Fire & Casualty Co., 576 N.E.2d 1141, 1144 (Ill. App. 1991)**. Furthermore, courts generally hold that effect should be given to all parts of the policy, including endorsements. **Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co., 608 N.E.2d 155, 158 (Ill. App. 1992)**. Also, Illinois courts avoid construing contract provisions in such a manner as to render them void. **Dowd & Dowd, Ltd. v. Gleason, 693 N.E.2d 358, 368 (Ill. 1998)**. Any ambiguities in the policy must be construed against the drafter, and in favor of the insured party. **Continental Cas. Co. v. McDowell and Colantoni, Ltd., 668 N.E.2d 59, 62 (Ill. App. 1996**); **see also Outboard Marine Corp. v Liberty Mutual Ins. Co., 607 N.E.2d 1204, 1219 (Ill. 1992)("any insured, whether large and sophisticated or not, must enter into a contract with the insurer that is written according to the insurer's pleasure by the insurer. Generally, since little or no negotiation occurs in this process, the insurer has total control of the terms and the drafting of the contract.")**. However, the court should "not search for ambiguity where there is none." **Crum, 620 N.E.2d at 1077**.

Defendants argue that summary judgment is proper because the Policy procured by Essex contains no obligation for Defendants to pay the deductible described in the Policy. Defendants maintain that the Policy clearly provides that the deductible is to be paid by the "Named Insureds under Coverage B," that Coverage

B is not applicable and that Defendants are not "Named Insureds under Coverage B." Defendants argue that since there is no such coverage under the plain language of the Policy there is no liability for anyone to pay a deductible. Essex counters that it is clear under the Policy that Defendants are obligated to pay the deductible. Specifically, Essex argues that to interpret the Policy otherwise would render the policy terms mere surplusage and would ignore the endorsements to the policy. Further, Essex argues that it is clear that the "Named Insured" is obligated to pay the deductible; that the endorsement modified the Policy and that Defendants must pay the deductible.

Alternately, Defendants argue that only "Name Insureds" are liable for payment of a deductible and that the Policy is ambiguous in identifying the "Named Insured," and Essex by its own admission and course of conduct has acknowledged that Defendants are not "Named Insureds." Thus, Defendants maintain that the Policy is clearly ambiguous in that in some places, it identifies the Named Insureds as SEMC or SDP and in other places, it identifies the Named Insured as the covered physicians. Essex argues that the course of dealings through the parties shows that Defendants were the Named Insureds and are responsible to pay the deductible. Essex maintains that Defendants consistently acted as the Named Insured under the Policy, exercised rights under the Policy and performed actions that were those of the Named Insured.

After reviewing the Policy as a whole and the case law, the Court finds that the plain language of the Policy is unambiguous. On page 1 of the Declarations,

item 7. Deductible states: "As per Endorsement No. 1." and Endorsement No. 1 states the Named Insrued as: "SISTERS OF DIVINE PROVIDENCE DBA ST. ELIZABETH HEALTH SERVICES AND ST. ELIZABETH MEDICAL CENTER." Considering the Policy, the Declarations and the Endorsements, the Court finds on its face that the Policy provides that SEMC and SDP are responsible for the deductible.

Further, the Court concludes that it would be an unreasonable interpretation of the Policy to find that the insured doctors were responsible to pay the deductible or to find that no one was responsible to pay the deductible. Defendants, relying on letters Essex sent (before and after this lawsuit was filed) to the emergency room doctors informing them that they were responsible for the deductible, maintain that Essex's own conduct establishes that the individual doctors are responsible for the deductible. However, the Court finds this argument to be illogical. In essence, Defendants are working backwards with the facts to achieve their desired result instead of starting at the beginning with the contract formation and the intent of the parties. Further, the question being is whether the doctors requiring the malpractice insurance under their employment contracts would have been willing to accept this type of insurance policy knowing that they were responsible for this deductible? At this stage in the litigation, the Court thinks not. Therefore, the Court denies Defendants and Third-Party Defendants' motions for summary judgment.

## V. Conclusion

Accordingly, the Court **DENIES** the pending motions for summary judgment (Docs. 69 & 70).

**IT IS SO ORDERED.**

Signed this 24th day of June, 2008.

/s/     *DavidRHerndon*

**Chief Judge**
**United States District Court**